# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA EDMONDS,<br>    Plaintiff,<br><br>    v.<br><br>TRI-P'S MANAGEMENT<br>CORPORATION, et al.,<br>    Defendants. | CV 20-3076 DSF (SKx)<br><br>Order DENYING Plaintiff<br>Sandra Edmonds' Motion for<br>Summary Judgment (Dkt. 33) |

Plaintiff Sandra Edmonds brings claims under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. section 12181, et seq., and the Unruh Civil Rights Act, California Civil Code section 51, et seq. against Defendant Tri-P's Management Corporation.  Dkt. 30 (SAC). Edmonds moves for summary judgment on her Second Amended Complaint (SAC).  Dkt. 33 (Mot.).[1]  Defendant opposes the Motion. Dkt. 34 (Opp'n).  This matter is appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  For the reasons stated below, the Motion is DENIED.

---

[1] The parties were required to meet and confer pursuant to Local Rule 7-3 and the Court's Standing Order.  Dkt. 8 at 3.  Edmonds' counsel claims defense counsel never responded to her proposal of several different dates and times to confer.  Dkt. 33-6 ¶ 26; dkt. 33-24.  Defendant does not address the meet and confer requirement in its Opposition.  This is unacceptable. The Court does not have time to address issues that could be resolved through the parties meeting and conferring in good faith.  Future failure to comply with Court orders will result in sanctions.

# I. BACKGROUND

Edmonds has osteoarthritis in her hips, knees, and lower back, which she states "severely impairs" her movement and ability to walk. Dkt. 33-5 (Edmonds Decl.) ¶¶ 4-5. "The cartilage in both of [her] knees ha[s] eroded; thus, the bones in [her] knees grind on each other, causing chronic pain and impairing [her] mobility. Essentially, the arthritis has caused [her] knees to weaken; and, as a result, [her] knees cannot properly support [her] body." Id. ¶ 5. Edmonds is classified as morbidly obese and reports her "weight means added pressure to [her] knees, hip, and lower back, which causes [her] pain." Id. ¶ 8. Edmonds says she uses a cane or walker when she walks and needs a wheelchair for long distances. Id. ¶ 6.

Edmonds also alleges she has chronic pain related to the lymph nodes under her arms as a result of six months of chemotherapy she underwent for Hodgkin's lymphoma in 2017. Id. ¶ 7. She states she was recently "diagnosed with atherosclerosis and cardiomegaly (enlarged heart). These conditions affect [her] endurance and cause [her] to experience tiredness and dizziness." Id. ¶ 10. She has a disabled persons parking placard. Id. ¶ 3.

Edmonds alleges that on four occasions – in March 2019, April 2019, May 2019, and December 2019 – she went to a Jack in the Box located on property owned by Defendant at 4210 Crenshaw Boulevard, Los Angeles, California 90008 (the Property). SUF ¶¶ 9-11.[2] Edmonds lives about a 5-minute drive from the Property. Edmonds Decl. ¶ 27.

---

[2] Citations to SUF refer to Defendant's Response and Objections to Plaintiff's Statement of Undisputed Facts and Conclusions of Law, dkt. 34-1, which incorporates Edmonds' proposed uncontroverted facts and Tri-P's responses to those facts. Citations to DUF refer to Plaintiff's Response to Defendant's Statement of Material Disputed Facts and Conclusions of Law, dkt. 35-1, which incorporates Tri-P's proposed uncontroverted facts and Edmonds' responses to those facts. To the extent certain facts are not mentioned in this Order, the Court has not relied on them in reaching its decision. The Court has independently considered the admissibility of the evidence and has not

Edmonds reports that when she visited the Property she had trouble (1) walking to the business due to the lack of a handrail and inadequate space to maneuver on the ramp landing, SUF ¶ 12-14; (2) opening the heavy restroom door, id. ¶ 15; (3) reaching the toilet tissue dispenser, id. ¶ 16; (4) locating an accessible route of travel because there was no directional signage, id. ¶ 17; and (5) walking to the business due to changes in level in the pavement and excess slopes in the route between the disabled parking spot and business entrance, id. ¶ 18.

Marc Friedlander, Edmonds' investigator, visited the Property on September 2, 2020. Id. ¶ 22. Friedlander "observed that the parking lot has severely damaged pavement, with uneven ground, divots, and joint reflection cracking, where the parking lot adjoins the public way(s)." Id. ¶ 23. Friedlander also identified additional issues, including: (1) the bottom ramp is not level and has a slope of 0.8 percent, id. ¶ 24; (2) "the ramp does not have a curb or barrier to protect against wheel entrapment on the side where the handrail posts terminate into the ramp surface," id. ¶ 25; (3) the designated disabled parking space has slopes exceeding 2%, id. ¶ 26; (4) the loading/unloading access aisle adjacent to the designated disabled parking space has slopes greater than 2%, id. ¶ 27; and (5) the mats inside and outside of the restaurant are not secured, "which can easily cause buckling and rolling," id. ¶ 28.

On October 16, 2020, Edmonds filed her SAC, which included the additional violations observed by Friedlander. Id. ¶ 29. Edmonds' Certified Access Specialist (CASp), John Battista, conducted an accessibility inspection of the parking lot, walkways, and restrooms at the Property on February 15, 2021, and prepared a Site Accessibility Evaluation dated February 22, 2021. Id. ¶ 36.

Defendant hired investigator Craig Lobnow to examine the Property. DUF ¶¶ 83-85. Lobnow visited the Property on June 12,

considered facts that are irrelevant or otherwise based on inadmissible evidence.

3

2020 and March 6, 2021 and prepared two reports, which concluded there was no violation of federal accessibility standards at the Property.  Id. ¶ 86. Lobnow found Edmonds' descriptions relating to ramp handrails did not constitute a violation of federal accessibility standards because "[w]ith slopes ranging from 5.2% to 7.1%, this 56-inch section does not have a vertical rise in excess of 6 inches."  Id. ¶¶ 87-93.  Lobnow concluded the slope at the bottom of the ramp was less than 2%.  Id. ¶¶ 94-99.  Lobnow stated the bathroom doors required less than five pounds to open and the center point of the tissue dispenser measured 19 inches from the ground.  Id. ¶¶ 100-114. Lobnow asserted Edmonds' descriptions relating to the signage did not constitute a violation of federal accessibility standards because signs are required only at inaccessible entrances and Edmonds did not allege any entrance was inaccessible.  Id. ¶¶ 115-121.

## II. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "This burden is not a light one."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).  But the moving party need not disprove the opposing party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.  If the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial.  Id. at 323-24; Fed. R. Civ. P. 56(c)(1).  A non-moving party who bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment.  See Celotex Corp., 477 U.S. at 322.

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party.  Id. at 248.  "[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues."  Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992).  Summary judgment is improper "where divergent ultimate inferences may reasonably be drawn from the undisputed facts." Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006)).  Instead, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (punctuation omitted).

### III. DISCUSSION

Defendant argues summary judgment is not appropriate because Edmonds lacks standing and fails to provide evidence that the Property violates federal accessibility standards.  See Opp'n at 1-3.

### A. Evidentiary Objections

"A district court's ruling on a motion for summary judgment may only be based on admissible evidence."  Oracle, 627 F.3d at 385.  A party seeking to admit evidence bears the burden of proof to show its admissibility.  Id.  Defendant object to Edmonds' statements in her declaration for lack of foundation, lack of competence, lack of relevance, and speculation.  See SUF ¶¶ 1-2, 4-8, 11-14, 17-18, 23-29, 32, 37-38, 40, 42-43, 46-52, 53-55.  Defendant also objects to certain proposed

undisputed facts as containing multiple statements, including conclusions of law.  Id. ¶¶ 7, 11, 12, 32, 54.

### 1.  Medical Testimony

Defendant repeatedly objects to Edmonds' statements about her conditions in her declaration because "where injuries complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, they *must* be proved by the *testimony* of medical experts."  See, e.g., id. ¶ 1 (quoting Tesone v. Empire Mktg. Strategies, 942 F.3d 979, 996-997 (10th Cir. 2019) (emphasis added)).  Other circuits have held medical evidence is not necessary at the summary judgment stage when the injuries would be obvious to a lay jury.  See Tesone, 942 F.3d at 996-998 (holding injuries not "susceptible to observation by an ordinary person" must "be proved by the testimony of medical experts," including an impairment that is "rare or of such character as to require skilled and professional persons to determine the cause and extent thereof." (internal quotation marks omitted)); Mancini v. City of Providence by & through Lombardi, 909 F.3d 32, 42 (1st Cir. 2018) ("medical evidence was not required to establish that [the plaintiff's] knee injury constituted an impairment" because "a lay jury can fathom [a knee injury] without expert guidance"); Marinelli v. City of Erie, Pa., 216 F.3d 354, 361 (3d Cir. 2000) (plaintiff's "failure to present medical evidence of his impairment, in and of itself, [did] not warrant judgment as a matter of law in favor of" defendant because plaintiff's "alleged medical difficulties (i.e., arm and neck pain) are among those ailments that are the least technical in nature and are the most amenable to comprehension by a lay jury").

"Whether medical evidence is necessary to support a disability discrimination claim is a determination that must be made on a case-by-case basis."  Mancini, 909 F.3d at 39.  Here, the Court finds expert testimony is not necessary to understand all of Edmonds' alleged conditions.  Edmonds largely relies on her osteoarthritis as an explanation for her limited mobility.  Edmonds Decl. ¶ 5.  She describes the condition as follows: "The cartilage in both of [her] knees have eroded; thus, the bones in [her] knees grind on each other, causing

chronic pain and impairing [her] mobility.  Essentially, the arthritis has caused [her] knees to weaken; and, as a result, [her] knees cannot properly support [her] body."  Id.  Edmonds also states she is classified as morbidly obese and her "weight means added pressure to [her] knees, hip, and lower back, which causes [her] pain."  Id. ¶ 8.

These conditions are easily understandable by a lay person.  But the same is not necessarily true as to Edmonds' claim that she has chronic pain related to the lymph nodes under her arms as a result of chemotherapy she underwent for Hodgkin's Lymphoma.  Id. ¶ 7. Should Edmonds seek to rely on that or her diagnoses of atherosclerosis and cardiomegaly (enlarged heart) to establish fatigue or lack of endurance, id. ¶ 10, these conditions would require expert testimony because they are lesser known and Edmonds has not adequately explained to the Court what the conditions are or how they cause pain, fatigue, or lack of endurance.

Edmonds is competent to testify as to the symptoms of her own illness and does not need expert testimony to explain things that could be understood by a lay jury.  While she would need an expert to explain her diagnoses of atherosclerosis and cardiomegaly, and perhaps the pain related to lymph nodes, that does not preclude the Court from considering her testimony regarding her own symptoms and experience with her other, easily understood, conditions.

### 2.    Relevance, Foundation, and Speculation

Defendant also objects to evidence on the basis of relevance, lack of foundation, and speculation.  "At the summary judgment stage, [the Court does] not focus on the admissibility of the evidence's form.  [The Court] instead focus[es] on the admissibility of its contents."  Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).  The Court has not considered irrelevant evidence in this order.  Further, Edmonds could establish through her own testimony at trial the foundation for why she must walk on a smooth surface without excess slopes or changes in level and similar issues.  See, e.g., SUF ¶ 1.

Because the relevant evidence Defendant objects to could be presented in an admissible form at trial, the Court may consider the evidence at the summary judgment stage. <u>Fraser</u>, 342 F.3d at 1037 (citing <u>Hughes v. United States</u>, 953 F.2d 531, 543 (9th Cir. 1992) (holding an affidavit could be considered on summary judgment despite hearsay and best evidence rule objections because the facts underlying the affidavit were of the type that would be admissible evidence, even though the affidavit itself might not be admissible)); <u>J.F. Feeser, Inc. v. Serv-A-Portion, Inc.</u>, 909 F.2d 1524, 1542 (3d Cir. 1990) (ruling hearsay evidence produced in an affidavit may be considered if the out-of-court declarant could later present the evidence through direct testimony). Defendant's objections are overruled.

## B. Edmonds' Disability and Standing

Defendant first argues summary judgment should be denied because there is a genuine dispute of fact as to whether Edmonds is disabled such that she would have been denied access at the Property. Opp'n at 6-9. The ADA prohibits discrimination on the basis of disability. 42 U.S.C. § 12182(a). It follows that Edmonds must qualify as a disabled individual in order to allege an injury that is protected by the ADA. <u>Chapman v. Pier 1 Imports (U.S.) Inc.</u>, 631 F.3d 939, 952 (9th Cir. 2011) ("An ADA plaintiff suffers a legally cognizable injury under the ADA if he is 'discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, [or] facilities . . . of any place of public accommodation.'" (alterations in original) (quoting 42 U.S.C. § 12182(a))). The ADA defines "disability," in pertinent part, as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1). This includes an "impairment that is episodic . . . if it would substantially limit a major life activity when active." <u>Id.</u> § 12102(4)(D). Major life activities include walking and standing. <u>Id.</u> § 12102(2)(A). The ADA instructs courts to construe this definition "in favor of broad coverage of individuals." <u>Id.</u> § 12102(4)(A).

First, Defendant argues Edmonds does not sufficiently establish a mobility related disability because (1) the first time she mentions

needing a wheelchair is in this Motion, (2) none of the medical records support any mobility limitations, (3) Edmonds' use of a wheelchair is not supported by any evidence other than her declaration, and (4) Edmonds lives in a home with steps at the entry and rear.  Opp'n at 6-8.[3]  Second, Defendant argues undergoing treatment in 2017 does not demonstrate a disability regarding Edmonds' arms and lymph nodes because medical records from February 22, 2021 confirm there is no recurrence of lymphoma.  Id. at 7.

To support her disability related to mobility issues, Edmonds submits several pieces of evidence.  First, she submits a declaration describing how her osteoarthritis in her hips, knees, and lower back impairs her mobility, which is exacerbated by her weight.  Edmonds Decl. ¶¶ 4-5, 8.  She additionally states she was recently diagnosed with atherosclerosis and cardiomegaly, which affect her endurance and make her tired and dizzy.  Id. ¶ 10.  Second, she proffers a picture of her disabled persons parking placard.  Dkt. 33-15.  Third, she submits photographs of her with her cane and walker.  Dkt. 33-16.  Fourth, she submits medical records.  Dkts. 33-17–33-21 (Medical Records).

Edmonds' medical records establish that she is prescribed medications for knee and joint pain, an inhaler for asthma, and pain relief medicine.  Dkt. 33-17.  The list of Edmonds' "active problems" includes osteoarthritis of the knees and hips, atheroscelosis of aorta, a history of weight loss surgery, obesity, prediabeties, Hodgkin's lymphoma, and thoracolumbar spondylosis.  Id.  An after-visit summary from a February 22, 2021 visit to Kaiser notes cardiomegaly (enlarged heart), atherosclerosis of aorata, obesity, osteoarthritis of bilateral knee, and osteoarthritis of bilateral hips under "health problems reviewed."  Dkt. 33-18.  The progress notes from Edmonds' physician from the same visit note Edmonds was working on weight

---

[3] As Edmonds notes, dkt. 35 (Reply) at 5, Tri-P's published Edmonds' home address in a court filing in violation of Local Rule 5.2-1.  There is no excuse for the failure to follow straightforward, applicable rules.  The failure to follow applicable rules and orders in the future will result in sanctions.

loss for hip and knee surgeries, was not experiencing chest pain or shortness of breath, and did not have leg swelling.  Dkt. 33-19.

To support her disability related to her upper body, Edmonds submits a declaration stating she has chronic pain under her arms as a result of six months of chemotherapy she underwent for Hodgkin's lymphoma in 2017.  Edmonds Decl. ¶ 7.  Her medical records also support a past diagnosis of Hodgkin's lymphoma.  See Medical Records.

In contesting a *defendant's* motion for summary judgment, a plaintiff need only make a "minimal showing" that she has a "substantial impairment" affecting a major life activity.  Head v. Glacier Northwest Inc., 413 F.3d 1053, 1062 (9th Cir. 2005) (emphasis added), overruled on other grounds by Murray v. Mayo Clinic, 934 F.3d 1101 (9th Cir. 2019).  However, this is *Edmonds'* motion and it is her burden to "point[] out to the district court that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

The Court finds that at this stage, Defendant has sufficiently raised a genuine issue of material fact regarding whether Edmonds has standing.  To have standing, the barrier in a place of public accommodation must "relate[] to [the plaintiff's] *specific disability*."  Chapman, 631 F.3d at 950-51 (quoting Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1047 (9th Cir. 2008)).  A plaintiff has standing and "a 'personal stake in the outcome of the controversy' so long as his or her suit is *limited to barriers related to that person's particular disability*.'"  Id. at 950 (quoting Doran, 524 F.3d at 1044), 954 ("Although Chapman alleges that he is 'physically disabled,' and that he 'visited the Store' and 'encountered architectural barriers that denied him full and equal access,' he never alleges what those barriers were and how his disability was affected by them so as to deny him the 'full and equal' access that would satisfy the injury-in-fact requirement (*i.e.,* that he personally suffered discrimination under the ADA on account of his disability)."); see also Lane v. Landmark Theatre Corp., No. 16-CV-06790-BLF, 2020 WL 1976420, at *9 (N.D. Cal. Apr. 24, 2020) ("nothing

in the record suggests that the alleged violations implicate the
Plaintiffs' mobility-related disabilities").

Edmonds' medical records confirm she has osteoarthritis, but it is
unclear to what extent it limits her mobility.  As Defendant notes,
Opp'n at 7, her pain medications are prescribed for pain management
"as needed."  See Medical Records.  She lives in a home with stairs, and
Edmonds states she "does not have difficulty going up and down the
stairs at her house."  Reply at 5.  She states she only needs a
wheelchair for long distances.  Edmonds Decl. ¶ 6.  Although she had
Hodgkin's lymphoma in the past, the progress notes from Edmonds'
physician after the February 22, 2021 visit note, "Recent Pet scan, no
recurrence of lymphoma."  Dkt. 33-19.  The medical records do not state
she has ongoing pain as a result of the chemotherapy.  It is not clear
from the records that Edmonds' conditions would have denied her "'full
and equal' access that would satisfy the injury-in-fact requirement."
Chapman, 631 F.3d at 954.  Viewing the evidence in the light most
favorable to Defendant, there are contested issues of material facts as
to whether Edmonds is disabled under the ADA and whether the
facility was inaccessible based on her conditions.[4]  The questions of
whether Edmonds is disabled and has standing are must be left to the
jury.  Because the Court finds Edmonds has not carried her burden to
establish standing, it does not consider her or Defendant's remaining
arguments as to whether certain elements at the Property violated the
ADA.[5]  The Court DENIES summary judgment on Edmonds' ADA
claim.

## C. Unruh Act Claim

In addition to her ADA claim, Edmonds alleges an Unruh Act
claim.  SAC ¶¶ 50-59.  The Unruh Act promises full and equal public
accommodation for individuals with disabilities.  Cal. Civ. Code § 51(b).

---

[4] The Friedlander declaration raises significant factual disputes as well as
identifying legal disputes the Court will have to resolve.

[5] For the same reason, the Court need not address whether the California
Building Code applies.

"A violation of the ADA is, by statutory definition, a violation of . . . the Unruh Act." <u>Johnson</u>, 401 F. Supp. 3d at 904 (quoting <u>Cullen v. Netflix, Inc.</u>, 880 F. Supp. 2d 1017, 1023 (N.D. Cal. 2012)) (citing Cal. Civ. Code § 51(f)).  Here, Edmonds' Unruh Act claim is exclusively based on her ADA claim.  Mot. at 27 ("Defendant violated the ADA.  Thus, there has been a *per se* violation of the UCRA.").  Because the Court denied Edmonds' Motion as to the ADA, it also DENIES the motion as to her Unruh Act claim.

## IV. CONCLUSION

Edmonds' Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

Date: March 29, 2021

_____
Dale S. Fischer
United States District Judge